IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


HENRY E. MILLS,
      Petitioner,

vs.                             Case No.:  4:12cv255/WS/EMT

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS,
      Respondent.
_____/

## REPORT AND RECOMMENDATION

      This cause is before the court on Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (doc. 1).  Respondent filed an answer and relevant portions of the state court record (doc. 15).  Petitioner filed a reply (doc. 19).

      The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

      The relevant aspects of the procedural background of this case are established by the state court record (*see* doc. 15).[1]  Petitioner was charged in the Circuit Court in and for Leon County,

_____

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (doc. 15).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

Florida, Case No. 2007-CF-2403, with one count of attempted armed robbery with a deadly weapon (Ex. A at 1).  A jury found him guilty as charged (Exs. E, F).  The court adjudicated Petitioner guilty and sentenced him as a prison releasee reoffender to fifteen years in prison, with pre-sentence credit of 406 days (Ex. A at 28–36).  Petitioner appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D08-4634 (Ex. G).  On November 2, 2009, the First DCA affirmed the judgment per curiam without written opinion (Ex. J).  Mills v. State, 22 So. 3d 74 (Fla. 1st DCA 2009) (Table). The mandate issued November 18, 2009 (id.).  The First DCA denied Petitioner's motion for rehearing on January 11, 2010 (Ex. K).  Petitioner filed a petition for review in the Supreme Court of Florida, Case No. SC10-335 (Ex. L).  The state supreme court dismissed the petition for lack of jurisdiction (Ex. M).  Mills v. State, 31 So. 3d 177 (Fla. 2010) (Table).

On December 1, 2009, Petitioner filed a motion to reduce or modify sentence, pursuant to Rule 3.800(c) of the Florida Rules of Criminal Procedure (Ex. O).  The state circuit court denied the motion in an order rendered December 10, 2009, and denied Petitioner's motion for rehearing on May 5, 2010 (id.).

On March 23, 2010, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. P).  He subsequently filed a motion to voluntarily dismiss (Ex. Q), which the state court granted on May 10, 2010 (Ex. R).

On July 8, 2010, Petitioner filed another Rule 3.850 motion (Ex. U at 1–14).  The state circuit court summarily denied the motion in an order rendered March 30, 2011 (id. at 45–68).  Petitioner appealed the decision to the First DCA, Case No. 1D11-2350 (Ex. V).  The First DCA affirmed the decision per curiam without written opinion on February 21, 2012, with the mandate issuing April 23, 2012 (Exs. Y, BB).  Mills v. State, No. 1D11-2350, 2012 WL 544247 (Fla. 1st DCA Feb. 21, 2012) (unpublished).

Petitioner filed the instant federal habeas action on May 17, 2012 (doc. 1).

II.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for

habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19. In relevant part, section 2254(d) now provides:

> (d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]   The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.   Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."   Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.   Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

---

[2] Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).   The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

Case No.:  4:12cv255/WS/EMT

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); <u>Ramdass v. Angelone</u>, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  <u>Neelley v. Nagle</u>, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* <u>Parker v. Head</u>, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  <u>Lockyer</u>, 538 U.S. at 73 (quoting <u>Williams</u>, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  <u>Early v. Packer</u>, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting <u>Williams</u>, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.  Moreover, where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law.  *See* <u>Henderson v. Campbell</u>, 353 F.3d 880, 890 n.15 (11th Cir. 2003).

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  <u>Williams</u>, 529 U.S. at 409.  Whether a State court's decision was an

unreasonable application of a legal principle must be assessed in light of the record the court had before it.  Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); cf. Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).  "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.'"  Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411).  The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  See Gill, supra at 1291–92.  Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  See Harrington v. Richter, 562 U.S. 86, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011); see also Gill, supra, at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless

objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see, e.g., Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact."). The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. See Gill, 633 F.3d at 1292. A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. Id.

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. See Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

III.    EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, see 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation

omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  Duncan, 513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has provided lower court with guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  404 U.S. at 277.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," id., 404 U.S. at 278, the Court rejected the contention in that case that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is not enough that a petitioner make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982).  In Anderson, the habeas petitioner was granted relief by the Sixth Circuit Court of Appeals on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)).  The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law."  Anderson, 459 U.S. at 7 (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim.  Id., 459 U.S. at 7 & n.3.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  Id.

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364. The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[3] The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court." Duncan, 513 U.S. at 365–66. More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004). In Baldwin, the Supreme Court recognized that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" Id., 541 U.S. at 32. This language, while not part of the Court's holding, provides helpful instruction. With regard to this language, the Eleventh Circuit explained in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion. However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'" McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)). This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

---

[3] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal. Presented with a state constitutional claim, the state court applied state law in resolving the appeal. 513 U.S. at 366.

416 F.3d at 1302-03 (citations omitted).[4]

The Eleventh Circuit, prior to Duncan, had broadly interpreted the "fair presentation" requirement.  After Duncan, however, the Eleventh Circuit has taken a more narrow approach.  For example, in Zeigler v. Crosby, the court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the United States Constitution.  345 F.3d 1300, 1307 (11th Cir. 2003).  The Eleventh Circuit specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words:  "Appellant was denied due process and a fair trial . . .," which could be interpreted as asserting a fair trial claim under the Due Process Clause of the Florida Constitution.  Id. at 1308 n.5.  The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases.  The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law) . . . did not present to the Florida courts the federal claim asserted to us."  Id.

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review.  See O'Sullivan, 526 U.S. at 839–40, 848; Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999).  This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default.  See Coleman v. Thompson, 501 U.S. 722, 734–35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state

---

[4] In his initial brief before the Court of Criminal Appeals, McNair cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005).  The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments. Id.

procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991).  In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. Bailey, 172 F.3d at 1303.  In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question.  *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," Siebert v. Allen, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," Judd v. Haley, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner.  Ford v. Georgia, 498 U.S. 411, 424–25, 111 S. Ct. 850, 858, 112 L. Ed. 2d 935 (1991); Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision.  Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001).  First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[5]  Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law.  Third, the state procedural rule must be adequate. *Id.*  The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion.  *Id.*

To overcome a procedural default such that the federal habeas court may consider the merits of a claim, the petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice.  Tower, 7 F.3d at 210; Parker, 876 F.2d 1470.  "For cause to

---

[5] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits.  Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541 (11th Cir. 1994).

exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)).  To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him."  Schlup, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

Id.  Although a habeas petitioner asserting a convincing claim of actual innocence need not prove diligence to overcome a procedural bar, timing is a factor relevant in evaluating the reliability of a petitioner's proof of innocence.  See McQuiggin v. Perkins, — U.S. —, 133 S. Ct. 1924, 1935, 185 L. Ed. 2d 1019 (2013).  As the Court stated in Schlup, "[a] court may consider how the timing of the submission and the likely credibility of [a petitioner's] affiants bear on the probable reliability of . . . evidence [of actual innocence]."  513 U.S. at 332; see also House, 547 U.S. at 537.

Within this framework, the court will review Petitioner's claims.

IV.    PETITIONER'S CLAIMS

A.    Ground One: "The trial judge's reasons for denying the Petitioner's judgement [sic] of acquittal deprived the Petitioner of his constitutional rights to a fair trial."

Petitioner alleges the trial court deprived him of a fair trial by denying defense counsel's motion for judgment of acquittal ("JOA"), in which counsel argued that the State failed to present sufficient evidence to satisfy the "force" element of attempted robbery (doc. 1 at 6–8).  Petitioner states he raised this issue on direct appeal of his conviction (id. at 8–9).

Respondent contends Petitioner failed to properly exhaust this claim, and it is now procedurally barred (doc. 15 at 3–5).  Respondent contends Petitioner argued on direct appeal that

the trial court erred by denying the motion for JOA; however, Petitioner presented the issue as one of state law and did not apprise the state court of any federal aspect to his claim of insufficient evidence (*id.*).  Respondent contends state procedural rules do not permit a second direct appeal; therefore, the claim is procedurally barred (*id.* at 5).  Respondent additionally contends that, notwithstanding the failure to exhaust, Petitioner's claim is without merit (*id.*).

In Petitioner's reply, he contends his challenge to the sufficiency of the evidence necessarily alerted the state court of the federal dimension of his claim (doc. 19 at 6–7).

The state court record demonstrates that in Petitioner's brief on direct appeal of his conviction, he argued the trial court erred by denying his motion for JOA because the evidence presented by the State was insufficient to establish the "force" element of the offense, *i.e.*, that force was used in the course of the attempted robbery (Ex. G at 8–10).  Petitioner's appellate brief framed his claim of trial court error in terms of state law without making any reference to federal law, and in the body of his argument he made no reference to the United States Constitution or federal law, and he cited no federal cases.  He argued Florida law only.  Nothing in Petitioner's brief put the state court on notice that the issue was being presented as a federal constitutional claim.  Therefore, the undersigned concludes Petitioner's claim of trial court error with respect to the denial of the motion for JOA was not fairly presented to the state court as a federal constitutional claim and is thus unexhausted.  *See, e.g.*, Ramos v. Sec'y, Dep't of Corr., 441 F. App'x 689, 697 (11th Cir. 2011) (unpublished) (petitioner's federal sufficiency of evidence claim was not exhausted where petitioner made only passing reference to federal constitutional right to due process in arguing that trial court improperly denied motion for judgment of acquittal because State failed to sufficiently prove premeditation element of murder); Pearson v. Sec'y,  Dep't of Corr., 273 F. App'x 847, 850 (11th Cir. 2008) (unpublished) (petitioner's federal sufficiency of evidence claim was not exhausted where petitioner cited exclusively to Florida cases in state court and addressed Florida law in all of his substantive arguments, even though Florida courts assess sufficiency of evidence under standard identical to federal standard); Cook v. McNeil, 266 F. App'x 843, 845–46 (11th Cir. 2008) (unpublished) (petitioner did not alert the state court to the alleged federal nature of his sufficiency of the evidence claim and therefore failed to exhaust his federal due process claim; even though petitioner moved for judgment of acquittal and although Florida courts assess the sufficiency of the

evidence under the standard applied in <u>Jackson v. Virginia</u>, 443 U.S. 307, 99 S. Ct. 2781, 2798, 61 L. Ed. 2d 560 (1979), petitioner cited exclusively to the state cases and all of his substantive arguments addressed Florida law; "the tenor of [petitioner's] narrow arguments that challenged the characterization of his knife and the sequence of his actions under the Florida statute did not bring a federal claim about due process to the attention of the state appellate court."). *But see* <u>Mulinix v. Sec'y for Dep't of Corr</u>, 254 F. App'x 763 (11th Cir. 2007) (unpublished) (petitioner's federal sufficiency of evidence claim was exhausted where petitioner presented identical argument to state and federal courts, and Florida courts' sufficiency of evidence standard was identical to federal standard).[6]

Now, any further attempt to exhaust the claim in the state courts would be futile, because Petitioner's claim would be procedurally barred under Florida law.  *See* <u>Smith v. State</u>, 445 So. 2d 323, 325 (Fla. 1983) ("Issues which either were or could have been litigated at trial and upon direct appeal are not cognizable through collateral attack."); *see also* <u>Rodriquez v. State</u>, 919 So. 2d 1252, 1262 n.7 (Fla. 2005) (issues were procedurally barred because they should have been, but were not, raised on direct appeal).

Petitioner has not alleged cause for his procedural default; nor has he alleged he is entitled to review of his claim through any recognized exception to the procedural bar. Therefore, Ground One is procedurally defaulted, and the court will not consider it on the merits.

B.    <u>Ground Two: "The trial judge's refusal to give a standard jury instruction denied the Petitioner his constitutional right to a fundamentally fair trial."</u>

Petitioner alleges after the parties had made closing arguments and the court had instructed the jury, defense counsel requested that the court give Florida's standard jury instruction 3.8(b), which provides:

> The evidence that you are about to receive that [(witness)] [(defendant)] has been convicted of (crime) should be considered by you only in weighing the credibility of [(witness's)] [(defendant's)] testimony and not for any other purpose.

---

[6] The undersigned cites unpublished opinions of the Eleventh Circuit only as persuasive authority and recognizes that the opinions are not considered binding precedent.  *See* 11th Cir. R. 36-2.

(doc. 1 at 10–11).  Petitioner alleges the trial court denied counsel's request (*id.*).  He contends the outcome of trial depended upon whether the jury believed his version of events or the victim's (Ms. Ragan) (*id.*).  Petitioner alleges during his testimony, he admitted to ten prior felony convictions (*id.*).[7]  He contends the court's refusal to give the instruction deprived him of a fair trial (*id.*). Petitioner states he raised this claim on direct appeal (*id.* at 11–12).

Respondent asserts the same exhaustion and procedural default defense asserted as to Ground One (doc. 15 at 6–8).

In Petitioner's reply, he contends he presented the federal dimension of his due process claim to the state court on direct appeal, but the state court failed to address it (doc. 19 at 8).

The state court record demonstrates that in Petitioner's brief on direct appeal of his conviction, he argued the trial court erred by denying defense counsel's request for Florida's standard jury instruction 3.8(b) (Ex. G at 11–12).  Petitioner's appellate brief framed his claim of trial court error in terms of state law without making any reference to federal law, and in the body of his argument he made no reference to the United States Constitution or federal law, and he cited no federal cases.  He argued only that the judge's failure to give the instruction was harmful error under Florida law.  Nothing in Petitioner's brief put the state court on notice that the issue was being presented as a federal constitutional claim.  Therefore, the undersigned concludes Petitioner's claim of trial court error with respect to the denial of defense counsel's request for the jury instruction was not fairly presented to the state court as a federal constitutional claim and is thus unexhausted.  *See, e.g.*, Ramos, 441 F. App'x at 697 (petitioner's federal due process claim based upon trial court's denial of defense counsel's request for Florida's "independent acts" jury instruction was not exhausted where petitioner made no reference to federal law other than in the conclusion of his law section, stating that the failure to issue the instruction denied "Florida and federal constitutional rights to due process and a fair trial.").  Had Petitioner identified his argument as a federal issue and cited the Fifth and Fourteenth Amendments to the United States Constitution in his appellate brief, Ground Two arguably would have been exhausted.  *See* Blanche v. Sec'y, Dep't of Corr., 378 F. App'x 984, 985 (11th Cir. 2010) (unpublished) (petitioner exhausted federal due process claim

---

[7] During the victim's testimony, she admitted to one prior felony conviction (Ex. E at 49).

Case No.:  4:12cv255/WS/EMT

regarding trial court's giving erroneous jury instruction where petitioner identified his argument as a federal issue and cited the Fifth and Fourteenth Amendments to the United States Constitution). However, Petitioner did not.

As with Ground One, any further attempt at exhaustion in the state courts would be futile, because Petitioner's claim would be procedurally barred under Florida law. *See* Smith, 445 So. 2d at 325; Rodriquez, 919 So. 2d at 1262 n.7.  Petitioner has not alleged cause for his default; nor has he shown he is otherwise entitled to federal review of his claim. Therefore, Ground Two is procedurally defaulted, and the court will not consider it on the merits.

    C.    Ground Three:  "Ineffective assistance of counsel for failing to investigate and present a proper defense based on temporary insanity or in the alternative to rely on a mental health defense other than insanity in violation of the Petitioner's Sixth Amendment right of the U. S. Constitution."

    Ground Four: "Ineffective assistance of counsel for failing to investigate and obtain the services of a diabetes expert to offer expert opinion and testimony which validates the Petitioner's documented claim of experiencing a diabetic episode at the time of the alleged crime, which caused him to act erratic, in violation of the Petitioner's Sixth Amendment right."

    Ground Five: "Ineffective assistance of counsel for failing to subpoena the defendant's medical records from the jail that clearly shows [sic] that the defendant was suffering from a diabetic episode upon his arrest in violation of his Sixth Amendment [sic] of the United States Constitution."

    Ground Six: "Ineffective assistance of counsel for failing to inform the Petitioner of the defense of temporary insanity and/or mental health, in violation of the Petitioner's Sixth and Fourteenth rights [sic] of the United States Constitution."

In Grounds Three through Six, Petitioner claims that defense counsel was ineffective for failing to investigate and present a temporary insanity or "mental deficiency" defense based upon Petitioner's suffering a "diabetic episode" at the time of the attempted robbery (doc. 1 at 13–30). Petitioner alleges he has a well-documented and prolonged history of "entering into periods of diabetic incoherence" during which he acts abnormally and does not realize what he is doing (*id.*). He alleges when he experiences such episodes, he is unable to remember what happened even after his blood sugar stabilizes (*id.*).  Petitioner alleges that prior to trial (in August of 2008), he informed counsel that in January of 2003, he suffered a diabetic episode while driving, which caused his

vehicle to flip (*id.*).  He alleges medical records documenting his condition were available to defense counsel, but counsel failed to investigate them (*id.*).  He alleges through reasonable investigation, counsel would have discovered that Petitioner had a history of becoming incoherent and acting erratically due to his diabetes, and he was experiencing such symptoms at the time of the attempted robbery (*id.*).  He contends counsel should have obtained the services of an expert to testify that Petitioner experienced a psychotic episode due to his low blood sugar at the time of the alleged crime, which caused him to be unaware of what he was doing (*id.*).  Petitioner alleges counsel questioned him about his diabetes and how he was feeling at the time of the commission of the crime during his trial testimony, but this was inadequate to present a temporary insanity defense based upon his diabetic condition (*id.*).  Petitioner alleges he raised all of these four claims in his Rule 3.850 motion (*id.*).

Respondent contends the state court's adjudication of Petitioner's claims was not based upon an unreasonable determination of the facts, and was not contrary to or an unreasonable application of clearly established federal law (doc. 15 at 11–15).

1.       Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668 (1984).  To obtain relief under Strickland, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  *Id.* at 687–88.  If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief.  *Id.* at 697.

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)).  The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688–89.  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Id.* at 689.  If the record is not complete regarding counsel's

actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do." Jones, 436 F.3d at 1293 (citing Chandler, 218 F.3d at 1314–15 n.15).  Furthermore, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so."  Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994).  Counsel's performance is deficient only if it is "outside the wide range of professional competence."  Jones, 436 F.3d at 1293 (citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").  "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ."  Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting Chandler, 218 F.3d at 1317).  Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'"  Id. (quoting Putman v. Head, 268 F.3d 1223, 1244 (11th Cir. 2001)).

Concerning what constitutes reasonable investigation, "counsel need not always investigate before pursuing or not pursuing a line of defense.  Investigation (even a nonexhaustive, preliminary investigation) is not required for counsel reasonably to decline to investigate a line of defense thoroughly."  Chandler, 218 F.3d. at 1318 (citing Strickland, 466 U.S. at 690–91).  In this context, "evidence of a petitioner's statements and acts in dealing with counsel is highly relevant to ineffective assistance claims."  Id. (citing Strickland, 466 U.S. at 691).  "Once we conclude that declining to investigate further was a reasonable act, we do not look to see what a further investigation would have produced."  Rogers, 13 F.3d at 388.

As to the prejudice prong of the Strickland standard, Petitioner's burden of demonstrating prejudice is high.  See Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002).  The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'"  Id. (quoting Strickland, 466 U.S. at 693). However, the Court has also clarified that a petitioner need not demonstrate it "more likely than not, or prove by a preponderance of evidence," that counsel's errors affected the outcome.  Strickland, 466 U.S. at 693–94.  Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694.  Indeed, it would be "contrary to" the law clearly established in Strickland for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence.  Williams v. Taylor, 529 U.S. at 405–06.

The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. Strickland, 466 U.S. at 694–95.  "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  *Id.* at 695.

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  Strickland, 466 U.S. at 698; Collier v. Turpin, 177 F.3d 1184, 1197 (11th Cir. 1999).

2.   Federal Review of State Court Decision

Petitioner raised his ineffective assistance of counsel claims in his Rule 3.850 motion (Ex. U at 5–10).  The state circuit court adjudicated the claims as follows:

> Defendant now raises five claims of ineffective assistance of counsel.  First, he alleges trial counsel was ineffective for failing to present a defense based on temporary insanity or another mental health issue.  Second, he alleges that trial counsel was ineffective for failing to procure an expert medical witness to testify that Defendant's medical condition caused him to act erratically.  Third, he alleges trial counsel was ineffective for failing to obtain Defendant's jail medical-records [sic] showing he was suffering a diabetic episode upon his arrest.  Fourth, he alleges trial counsel was ineffective for failing to inform Defendant of temporary insanity or another mental health defense.  Fifth, he alleges trial counsel was ineffective for failing to object to the introduction of involuntary spontaneous utterances he made to law enforcement officers.

> Defendant's claims are premised on theories of temporary insanity or cognitive disability stemming from his diabetic condition.  In his motion, Defendant states that he suffered a diabetic episode in 2003 which resulted in his truck flipping over.  He claims a documented medical history showing that his diabetes has caused

him to go into episodes of incoherent behavior where he does not realize what he is doing, to act out abnormally, aggressively, and violently, and even to blackout, unable to remember what happened after an episode ends.  He also points out that upon his arrival at jail he was diagnosed with diabetic symptoms so severe that he was kept in the infirmary for a full week.

As a result, Defendant argues, he presented a clear case of temporary insanity or some other cognitive disability at the time of the offense.  The Court finds that Defendant's trial testimony directly refutes these arguments.  When discussing the night in question, he recounted a clear chain of events, and did not testify as to any loss of memory.  *Exh. 1 – Jury Trial Transcript, Vol. 2, pgs. 112–31*.  In fact, he claimed no physical symptoms beyond jitteriness, dizziness, and vision problems. *Id.* at 115, 117,121–22, 126–27.  Ultimately, his testimony shows that he not only recognized and appreciated the danger he posed to himself and others while driving during his alleged diabetic episode, *see id.* at 115, 122, 127, but that he also possessed the wherewithal and moral fortitude to provide collateral against a purchase of food that he could not afford to make, rather than simply stealing it.  *See id.* at 120–22.

In Florida, the test for insanity as a defense to a criminal charge is whether, at the time of the offense, the defendant had a mental infirmity, disease, or defect and, as a result, did not know what he was doing or did not know what he was doing was wrong.  *See Hall v. State*, 568 So. 2d 882, 885 (Fla. 1990); *Brown v. State*, 994 So. 2d 480, 482 (Fla. 1st DCA 2008).  In light of his testimony, Defendant clearly did not meet the threshold test for insanity at the time of the offense, nor did his actions appear otherwise involuntary.  As a result, trial counsel's performance was not deficient for failing to present a defense based on temporary insanity or cognitive disability, to procure an expert medical witness's testimony in that regard, to obtain Defendant's jail medical-records [sic], or to inform Defendant of temporary insanity or some other unspecified medical defense.  *See Peede v. State*, 955 So. 2d 480, 502–03 (Fla. 2007) (holding that counsel cannot be deficient for failing to take meritless action).  Therefore, Defendant's first four claims of ineffective assistance must fail.

(Ex. U at 45–47).  The First DCA affirmed the decision (Ex. Y).

During Petitioner's trial testimony, he described his mental and physical condition prior to, during, and after the attempted robbery.  He testified that at approximately 1:00 a.m. in the early morning of July 27, 2007, he awoke after having slept since noon the previous day (Ex. F at 116–17).  He testified he had not had anything to eat since he went to sleep (*id.* at 116).  Petitioner

testified he gave a man a ride to meet someone and then stopped at a Shell gas station (the location of the attempted robbery) to get something to eat (*id.*).  He continued:

> Q [by defense counsel].  Okay.  And why were you trying to get something to eat?
>
> A [by Petitioner].  I am a diabetic and my sugar level was getting real low and I was having eye problems in and out.
>
> Q.  Okay.  What happens to you when your blood sugar gets low?
>
> A.  Some people can pass out from it, but I just—I had never had a pass out but once, but I get real jittery.
>
> Q.  Okay.  Do you get dizzy?
>
> A.  Yes.
>
> Q.  How about disoriented?
>
> A.   Sometimes it makes you that way.
>
> Q.  Okay.  How long have you had diabetes?
>
> A.  Since 2001.
>
> Q.  And how are you treating your diabetes?  With pills or shots?
>
> A.  With pills.  I was currently on pills.

(Ex. F at 115).  Petitioner described what happened after he arrived at the Shell station:

> A.  I got out, walked up to the door, pulled the door.  It was locked.  So I headed back to my truck to leave.  At the time I went to get in the truck, I heard the door, somebody open the door.  So I turned around and walked back into the store.  When I walked in, the young lady, she was behind the counter, but she was on the phone.  . . . .
>
> I grabbed a bag of sunflower seeds, and I ran up to the counter and laid them down.  Then I went into my pocket.  First I asked her how much was the seeds and she just said 59 cents off the top of her head.  So as I was counting my money, I didn't have enough change to get it.
>
> So at the time I was kind of—I just put it back in my pocket.  And I had my knife on me that I carry at work every day with me.  I pulled it out.  I said, look,

ma'am.  I said, I am in need of something to eat.  I said, the only thing I got, I will
let you hold my knife until the next day.
. . . .
Q.  You had some change in your pocket?

A.  Yes.

Q.  Did you count it?

A.  I didn't never count it all—

Q.  You didn't even have 59 cents?

A.  It wasn't enough.  I knew it wasn't.

Q.  Okay.  Now, what exactly did you say to Ms. Ragan?

A.  She never really acknowledged me when I asked here [sic].  She was still so busy
on the phone.  I said look, ma'am.  I said here, I got a knife. Would you hold this and
let me bring you the money back.  I said I will stop on my way from work and drop
it off to you.  She kind of like didn't acknowledge what I was saying.  And then all
of a sudden when she—I guess she wasn't even standing at the counter.  She was
leaning back up against the shelf back away from the counter on the phone.  She was
so busy having a conversation.  She never really hardly wanted to acknowledge me.

Q.  Did you hear her say she was going to call the police?

A.  After she noticed the knife, she told her friend, I guess whoever she was talking
to, call the cops, there is a guy trying to rob me.  And I went, ma'am, I am just trying
to get something to eat.  I don't want to do nothing to you.  But she was so out of it
just saying, call the cops, call the cops.  So I just walked out of the store.  And I laid
the seeds down and walked out.

Q.  Why wouldn't you just stay there and try to explain yourself and try to tell her
that, you know, you got me all wrong?

A.  I was already jittery from my low sugar level and she just kind of freaked me out,
too, at the time.

Q.  Were you trying to rob her?

A.  No, ma'am.  I have no need to rob anyone.

Q.  All right.  So did you run out of the store?

A.  No.  I walked out the store.

Q.  Okay.

A.  As I was getting to my truck, I looked back.  She had come out behind me.  So I turned around and looked at her.  And after I looked at her, I got in the truck calmly, cranked up and drove off.

(Ex. F at 117–22).  Petitioner testified he then drove off and went to a Circle K, where he knew the people who worked there and "they let me have what I need when I need it" (*id.* at 122).  When asked why he did not go that store first, Petitioner testified:

A.  I didn't think I would make it back out there because of the way my sugar—it dropped so fast at times.  You don't know if you are going to blank [sic] out or not.

Q.  Now, how do seeds help you with your blood sugar?

A.  Any food you eat, when it hit your stomach, it will instantly bring your sugar level back up to a level that you can concentrate, keep you from going under.

Q.  Do you know whether seeds are protein or carbohydrates or sugar?

A.  Protein and carbohydrates.

Q.  Okay.

A.  And it turns into sugar.

Q.  The protein turns into sugar?

A.  Yeah.

(Ex. F at 122–23).  Petitioner testified he arrived at the Circle K, and as he was opening his door to get out, he saw the police (*id.* at 123).  He testified the officer had a gun, so he put his hands up (*id.*).  He testified he was subsequently taken to the police station (*id.* at 124).  Petitioner testified he became angry with the officers at the police station because of "the way they talk to people" (*id.*).  Petitioner testified he was not upset that they were taking him to jail, he was upset because one of the officers "was yelling at me and saying did you do this, did you do this and that" (*id.*).

On cross-examination, the prosecutor followed-up on why Petitioner did not go to the Circle K first, knowing that he knew the employees there and could get food even though he didn't have enough money:

A.  I didn't know if I could make it out there or not at that time because—

Q.  But it is only three miles up the road?

A.  I get jittery.  I was starting to focus in and out on eyesight and I was getting kind of leery about driving like that.

Q.  Did you have any problem getting from the Shell station to the Circle K once you left the Shell station?

A.  No.  I made it out there.

Q.  You didn't have any problem with that?

A.  I had problems driving.  I wasn't in no hurry to get there.  I drive about 40 miles an hour in case I did go under.

(Ex. F at 130).

The state court's factual findings (*i.e.,* that Petitioner recounted a clear chain of events, did not testify as to any loss of memory, claimed no physical symptoms beyond jitteriness, dizziness, and vision problems, recognized and appreciated the danger he posed to himself and others while driving during his alleged diabetic episode, and possessed the wherewithal to provide collateral against a purchase of food that he could not afford to make, rather than simply stealing it) are supported by the trial transcript.  Therefore, this court must defer to those findings.

This court must also defer to the state court's determination of any state law issues.  *See* Missouri v. Hunter, 459 U.S. 359, 366, 103 S. Ct. 673, 74 L. Ed. 2d 535 (1983); Bradshaw v. Richey, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005) ("A state court's interpretation of state law . . . binds a federal court sitting in habeas corpus."); *see also* Mullaney v. Wilbur, 421 U.S. 684, 691, 95 S.Ct. 1881, 44 L. Ed. 2d 508 (1975) ("State courts are the ultimate expositors of state law," and federal courts must therefore abide by their rulings on matters of state law) (citations and footnote omitted); Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983).  Therefore, this court defers to the state court's determination that in Florida, the test for insanity as a defense

to a criminal charge is whether, at the time of the offense, the defendant had a mental infirmity, disease, or defect and, as a result, did not know what he was doing or did not know that what he was doing was wrong.  Additionally, the court defers to the state court's determination that the physical and mental state described by Petitioner in his trial testimony did not meet Florida's threshold for insanity at the time of the offense.

In his federal petition, Petitioner alleges that during episodes of "diabetic incoherence" he does not realize what he is doing, is incoherent, acts erratically and sometimes aggressively and violently, blacks out, and does not remember what happened even after his blood sugar stabilizes. However, Petitioner's trial testimony demonstrates he remembered what happened that night. Further, his testimonial description of his physical and mental condition does not suggest he was suffering from "diabetic incoherence" as he describes it on the night of the attempted robbery. Moreover, even if Petitioner's medical records from the jail showed that upon his arrival at the jail he was placed in the infirmary due to low blood sugar, which is what Petitioner alleges the records would show (*see* doc. 1 at 25; doc. 19 at 11), this evidence still would not suggest that Petitioner did not know what he was doing, or did not know that what he was doing was wrong, while he was in the Shell station.

With regard to counsel's failure to consult a medical expert, Petitioner has not shown that expert testimony regarding his mental condition would have been admissible.  Diminished capacity is not a viable defense in Florida.  *See* Evans v. State, 946 So. 2d 1, 11 (Fla. 2006).  Further, evidence of an abnormal mental condition—but insufficient to constitute insanity—is not admissible to negate intent.  *Id.* at 8; *see also* Chestnut v. State, 538 So. 2d 820, 825 (Fla. 1989) (evidence of abnormal mental condition not constituting legal insanity is inadmissible for purposes of proving either that accused could not or did not entertain the specific intent or state of mind essential to proof of the offense, in order to determine whether crime charged, or lesser degree thereof, was in fact committed).

> [T]o be relevant to an insanity defense, expert testimony must concern whether the defendant (1) was incapable of distinguishing right from wrong (2) as a result of a mental infirmity, disease, or defect.  Both aspects of the insanity defense must be addressed.  Expert testimony that a defendant suffered from a mental infirmity,

disease, or defect without concluding that as a result the defendant could not distinguish right from wrong is irrelevant.

Owen v. State, 986 So. 2d 534, 546 (Fla. 2008) (citations omitted).

Here, Petitioner failed to show that, upon consideration of his medical records, his own description of his physical and mental state on the night of the crime, and the description of his behavior provided by the victim and arresting officers, a medical expert would have concluded that Petitioner did not know what he was doing, or did not know that what he was doing was wrong, at the time of the attempted robbery. Therefore, counsel's failure to consult with, or present testimony from, a medical expert was not unreasonable.

Most importantly, the strategy pursued by defense counsel was reasonable. Counsel pursued the theory that the reliable evidence, including the videotape and still photos of Petitioner's interaction with the victim/clerk and Petitioner's explanation of his conduct that night, showed that the victim misinterpreted Petitioner's conduct; and that Petitioner did not act with force or violence, nor were his actions such that would reasonably put a person in fear (see Ex. E at 171–79). This was a much more viable defense than temporary insanity.

Petitioner failed to demonstrate that the state court's adjudication of Grounds Three, Four, Five, and Six (Grounds 1, 2, 3, and 4 of his Rule 3.850 motion) was based upon an unreasonable determination of the facts, contrary to Strickland, or an unreasonable application of Strickland. Therefore, he is not entitled to federal habeas relief on any of these claims.

    D.    Ground Seven:  "Ineffective assistance of counsel for failure to move to suppress the Petitioner's involuntary statements made when Petitioner was incoherent and without a sound state of mind due to the fact that Petitioner was experiencing a diabetic episode at the time of arrest, in violation of the Petitioner's Sixth Amendment right of the United States Constitution."

In Petitioner's final ground, he contends defense counsel should have moved to suppress his statements to Investigator Mark Lewis, on the ground that they were involuntary due to his state of mind caused by his medical condition (doc. 1 at 31–32). He alleges he informed Investigator Lewis that he was a diabetic and became jittery and disoriented while driving home from work, so he stopped at the Shell station to get food but had no intent to commit any crime (id.). Petitioner asserts Investigator Lewis's testimony that Petitioner's demeanor was verbally abusive and in "an

intoxicated state" shows that his statements were involuntary due to his "state of mind" (*id.*).
Petitioner acknowledges that defense counsel moved to prevent introduction of the statements, on
the ground that Petitioner had not waived his <u>Miranda</u> rights, but he contends counsel should have
argued this additional ground for suppression (*id.*).  Petitioner asserts he presented this claim in his
Rule 3.850 motion (*id.* at 32–33).

Respondent asserts there was no evidence Petitioner was suffering from temporary insanity
or diminished mental capacity such that his spontaneous statements to police were involuntary;
therefore, the state court's denial of his ineffective assistance of counsel claim was not unreasonable
(doc. 15 at 15–19).

       1.      Clearly Established Federal Law

The <u>Strickland</u> standard set forth *supra* governs this claim.

       2.      Federal Review of State Court Decision

Petitioner raised this claim as Ground 5 of his Rule 3.850 motion (Ex. U at 10–11).  The state
circuit court adjudicated the claim as follows:

> Defendant's trial testimony [ ] rebuts his allegation of involuntariness with respect
> to the spontaneous utterances he made to police.  He testified that, upon being
> arrested, he made angry statements because he did not like the way the way the
> officers were talking to him.  [Trial transcript] at 124, 128.  Given that testimony and
> Defendant's actions leading up to that point, the Court finds nothing in the record to
> indicate Defendant's statements were involuntary.  Therefore, trial counsel was not
> deficient for failing to object to their admission.  *See Peede*, 955 So. 2d at 502–03.
> Even assuming deficiency, the Court finds no reasonable probability that suppression
> of Defendant's statements would have altered the outcome of the trial.  Thus, his
> final claim of ineffective assistance must also fail.

(Ex. U at 47).

It is well settled that statements or confessions made during a time of mental incompetency
or insanity are involuntary and, consequently, inadmissible.  *See* <u>Townsend v. Sain</u>, 372 U.S. 293,
83 S. Ct. 745, 9 L. Ed. 2d 770 (1963); <u>Blackburn v. State</u>, 361 U.S. 199, 80 S. Ct. 274, 4 L. Ed. 2d
242 (1960).  Voluntariness is premised on the totality of the circumstances, *see* <u>Sullivan v. State of
Ala.</u>, 666 F.2d 478, 482 (11th Cir. 1982) (citing <u>Blackburn</u>, 361 U.S. at 206), and requires more than
mere mental illness to render a confession involuntary.  For example, in <u>Colorado v. Connelly</u>, 479
U.S. 157, 161–70, 107 S. Ct. 515, 93 L. Ed. 2d 473 (1986), the Supreme Court upheld the murder

conviction of a defendant suffering from schizophrenia who confessed to a police officer after the "voice of God" instructed him either to confess to the murder or to commit suicide.  The Court held the confession voluntary because the compulsion to confess was not accompanied by "coercive police activity."  479 U.S. at 164–67; *see also* United States v. Barbour, 70 F.3d 580, 585 (11th Cir. 1995); United States v. Palmer, 203 F.3d 55, 61–62 (1st Cir. 2000) ("In the context of the voluntariness of a confession, a defendant's mental state by itself and apart from its relation to official coercion never disposes of the inquiry into constitutional voluntariness.").  Thus, it is not sufficient for a defendant merely to show that he was mentally ill; rather, he must establish that his mental state had the actual effect of rendering his statements to law enforcement unknowing or involuntary.  It is also insufficient for a defendant to show that his mental state could have impaired him to the point that his statements cannot be considered a product of a free mind and rational intellect; instead, the record must establish that, due to a mental disorder, the defendant was in fact unable to comprehend his privilege against self-incrimination.

The trial transcript demonstrates that prior to the taking of testimony, defense counsel made a motion to preclude Investigator Lewis's testimony regarding Petitioner's statements at the police station, on the ground that there was no proof Petitioner knowingly and voluntarily waived his Miranda rights prior to making the statements (Ex. E at 8).  Outside the presence of the jury, the State proffered Investigator Lewis's testimony.  Lewis testified he attempted to interview Petitioner in a secured interview room of the police station after Petitioner was arrested (Ex. F at 86, 88).  He testified he read Petitioner his Miranda rights from a card, but Petitioner "wouldn't acknowledge them" (*id.* at 90).  Lewis testified that because Petitioner was not going to make a statement, he instructed the arresting officer to take Petitioner to jail (*id.* at 89–90).  Lewis testified Petitioner became very rude, verbally abusive, uncooperative, and "had an intoxicated state of mind" (*id.* at 86, 89–90).  Lewis testified Petitioner spontaneously stated, "How the fuck are you going to charge me?  I didn't steal shit.  You can't charge me.  The lady came out talking to me." (*id.* at 87).  Lewis testified Petitioner did not make the statements in response to any questions Lewis  asked him (*id.* at 86–87).  Lewis further testified he was not threatening Petitioner, yelling or screaming at him, or trying to provoke him (*id.* at 90).  The court denied defense counsel's motion to exclude Petitioner's statements to Investigator Lewis (*id.* at 95).  The court found that Petitioner's statements were not

elicited by law enforcement, and were non-responsive, non-coerced, and not the result of any threat; instead, Petitioner made the statements during "an outburst of emotion based on a development that Mr. Mills didn't like" (*id.* at 133).

Investigator Lewis testified to the jury that he encountered Petitioner at the police station after Petitioner was arrested (Ex. F at 102).  Lewis testified he instructed another officer to take Petitioner to jail, and Petitioner said, "You can't charge me.  The lady came out talking to me.  How the fuck are you going to charge me, I didn't steal shit" (*id.* at 102–03).

As previously noted, Petitioner told the jury he became angry with the officers at the police station because of "the way they talk to people" (Ex. F at 124).  Petitioner testified he was not upset that they were taking him to jail; rather, he was upset because one of the officers "was yelling at me and saying did you do this, did you do this and that" (*id.*).

After Petitioner testified, the prosecutor recalled Investigator Lewis and asked whether he yelled, raised his voice, or was rude to Petitioner at any time during their encounter (Ex. F at 148). Lewis responded, "Not at all." (*id.*).  The prosecutor asked Lewis whether Petitioner asked him for food at any point, and Lewis responded no (*id.*).

Although Petitioner was clearly angry when he made the statements, his statements were coherent.  There is no evidence suggesting Petitioner was insane at the time of his statements to Investigator Lewis, or that he was unable to comprehend the Miranda rights that Lewis read to him. Further, there is no evidence suggesting Lewis or any other officer forced Petitioner to speak, mistreated him, or took advantage of his state of mind.  Therefore, the state court reasonably concluded there was nothing in the record to indicate that Petitioner's statements were involuntary or unknowing.

Inasmuch as defense counsel challenged the admissibility of Petitioner's statements on Miranda grounds, and Petitioner failed to show that defense counsel had a meritorious basis for challenging the admissibility of the statements on the ground that Petitioner's mental state rendered his statements unknowing or involuntary, Petitioner failed to demonstrate the state court's adjudication of his claim was based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of Strickland.  Therefore, he is not entitled to federal habeas relief on Ground Seven.

## V.   CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.     That the petition for writ of habeas corpus (doc. 1) be **DENIED**.

2.     That a certificate of appealability be **DENIED**.


At Pensacola, Florida, this 10<u>th</u> day of November 2014.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO THE PARTIES**</u>

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**